United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. EUGENE LATRELL MCNEELY, Defendant. | Case No. 17-cr-00204-JD-1 **ORDER RE MOTION TO SUPPRESS** Re: Dkt. No. 76 |

This order resolves defendant's motion to suppress. Dkt. No. 76. Because the parties are familiar with the facts, the Court does not repeat them here except as relevant to the resolution of the motion. The motion is denied.

**DISCUSSION**

**I. FEBRUARY 2, 2016 SEIZURE OF MCNEELY'S CELL PHONE**

McNeely challenges the seizure of his cell phone by Oakland Police Officer Christophe Marie on February 2, 2016. His main claim is that the facts of the seizure here put this case "squarely" under the holding in *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016). Dkt. No. 76 at 7. They do not.

In *Lara*, the circuit found defendant's Fourth Amendment rights were violated when "probation officers conducted two warrantless, suspicionless searches of his cell phone." 815 F.3d at 607. Our circuit affirmed a prior holding that "a probationer's acceptance of a search term in a probation agreement does not by itself render lawful an otherwise unconstitutional search of a probationer's person or property." *Id*. at 609. Lara's probation agreement "required him to 'submit [his] person and property, including any residence, premises, container or vehicle under [his] control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer, with or without a warrant, probable cause, or

reasonable suspicion.'" *Id*. at 607. Even so, the court balanced the defendant's privacy interest against the government's interest in deciding his Fourth Amendment challenge, and concluded that "[o]n balance, . . . in the circumstances of this case the searches of Lara's cell phone were unreasonable." *Id*. at 612.

McNeely was also a probationer with a search condition allowing for law enforcement officers to conduct a search and seizure of his person, vehicle, residence or any property under his control, with or without a search warrant. That was one of the reasons he was stopped. On February 2, 2016, Officer Marie "spotted Mr. McNeely driving a blue Ford Expedition SUV," and, "knowing that he was on probation with a full search S-7 search clause, [Officer Marie] elected to conduct an enforcement stop of the Expedition to conduct a compliance check of [his] probation." Dkt. No. 92-3 (Marie Decl.) ¶¶ 7-8. An "S-7 search condition" is "OPD code for a 'four-way' search condition and means that law enforcement officers can conduct a warrantless search of a probationer's person, vehicle, residence, or property under their control." Dkt. No. 92-2 (Delmoral Decl.) ¶ 20. *Lara* does not prohibit law enforcement officers from stopping probationers for enforcement stops pursuant to their probation search conditions. *See Lara*, 815 F.3d at 610 (when a person is on probation, "his reasonable expectation of privacy is lower than someone who has completed probation or who has never been convicted of a crime."). The initial stop here does not implicate the same kinds of concerns as the warrantless cell phone searches that were at issue in *Lara*.

Other circumstances preceding McNeely's stop and search, and the eventual cell phone seizure, further undercut McNeely's reliance on *Lara*. Officer Marie recognized McNeely because he had previously received an email attaching McNeely's photo, advising OPD officers to be "on the lookout" for McNeely because he was "under investigation for charges related to pimping and pandering of a minor." Marie Decl. ¶ 5. The email had also stated that McNeely "was on felony probation with a full S-7 search clause for a violation of California Penal Code Section 136.1(C)(1), which is felony Intimidation of a Witness using Force or Express or Implied Force." *Id*. This, too, formed the basis of Officer Marie's decision to stop McNeely. *See id*. ¶ 7 ("I recognized Mr. McNeely from the picture of him in the email sent by Officer Creed that [he]

2

had seen recently"). It also led to Officer Marie calling "the VICE unit of the SVU, which I knew to be running the investigation into Mr. McNeely's alleged pimping," during his February 2, 2016 encounter with McNeely. *Id*. ¶ 14. Because of these additional facts, Officer Marie and his partner, Officer Quezada's stop of McNeely on February 2, 2016, can additionally be characterized as an investigatory stop that was supported by a reasonable suspicion of criminal activity. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989). Officer Delmoral's declaration submitted in support of the government's opposition adequately sets out the police officers' reasonable suspicion. *See United States v. McCloud*, No. 4:17-cr-00025-JD, 2018 WL 3009097, at *2 (N.D. Cal. June 15, 2018) ("The reasonable-suspicion standard is not a particularly high threshold to reach. Although a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.") (quotations omitted).

During this permissible stop of McNeely, it is undisputed that his cell phone was "in plain view on top of the middle console of the vehicle and plugged into a car charger cord." Marie Decl. ¶ 13. It is also undisputed that Officer Marie took possession of McNeely's cell phone only after a telephone conversation with OPD Officer Rio Delmoral, who was one of the officers leading the investigation into McNeely, and who "directed [Officer Marie] to collect any cell phones that were in Mr. McNeely's possession as evidence in the investigation into him for pimping a minor victim." *Id*. ¶ 14. In the course of his investigation, Officer Delmoral had "already viewed text messages on Victim One's phone between her and McNeely about pimping." Delmoral Decl. ¶ 21. So there was no question about the evidentiary value of McNeely's phone for that investigation.

Officer Delmoral also told Officer Marie that "there was probable cause to arrest Mr. McNeely on charges of pimping a minor, but that a warrant for his arrest would be issued at a later time," and so Officer Marie let McNeely go after taking his phone. Marie Decl. ¶ 16. In the meantime, Officer Delmoral immediately went to speak to his supervisor, Sergeant Hamann Nguyen, who, after listening to Officer Delmoral's description of his phone call with Officer Marie, instructed that McNeely be arrested "now." Delmoral Decl. ¶ 22. Consequently, just "[a]

3

1 few minutes after [Officers Marie and Quezada] released Mr. McNeely, Officer Delmoral called
2 [Officer Marie] and informed [him] that there was probable cause to arrest Mr. McNeely and
3 instructed [Officer Marie] to place Mr. McNeely under arrest." Marie Decl. ¶ 17. Officers Marie
4 and Quezada then located McNeely again in the vicinity and placed him under arrest,
5 approximately ten minutes after letting him go. *Id*. ¶ 17-19; Dkt. No. 92-5 (Quezada Decl.) ¶ 8.

In light of the circumstances as a whole, Officer Marie's warrantless seizure of McNeely's cell phone -- during a permissible enforcement/investigatory stop and ten minutes prior to his lawful arrest -- did not offend the Fourth Amendment. It was a valid seizure under the "plain view" doctrine, because the officers "had a prior justification for an intrusion in the course of which [they] came inadvertently across a piece of evidence incriminating the accused." *Horton v. California*, 496 U.S. 128, 135-36 (1990). It was also permissible under the inevitable discovery exception to the exclusionary rule because the government has demonstrated, "by a preponderance of the evidence, that it would inevitably have discovered the incriminating evidence through lawful means." *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). Officer Delmoral declares that "[i]f Officer Marie and Officer Quezada had not seized McNeely's cell phone during their first interaction, I definitely would have instructed them to seize his cell phone after they arrested him." Delmoral Decl. ¶ 25. Officer Marie states, "Had I not seized Mr. McNeely's cell phone minutes earlier, it would have been my practice to seize his cell phone after he was arrested . . . ." Marie Decl. ¶ 21. And Officer Quezada echoes, "[I]f Officer Marie had not seized his cell phone during our interaction with him minutes before we arrested him, we would have definitely seized [McNeely's] cell phone once we arrested him. This is because there would have been probable cause to believe that, based on OPD's knowledge of evidence suggesting at the time that Mr. McNeely was a pimp, his cell phone could have provided valuable evidence to prove or disprove those allegations." Quezada Decl. ¶ 12. These statements, together with the other statements in the officers' declarations, satisfy the government's burden.

## II. TIME BETWEEN SEIZURE AND SEARCH WARRANTS

McNeely also challenges as unreasonable the amount of time that passed between the seizure of the cell phone and the obtention of a warrant to search it. The police seized the phone

4

from McNeely on February 2, 2016, and the government obtained a first warrant to search it on March 15, 2016, five weeks and six days later. Dkt. No. 92-1 (Weingarten Decl.), Ex. B.

It is certainly true that the delay of 41 days between the seizure and the first warrant was not a model of optimal prosecutorial performance. The government has aggravated the issue by providing no explanation for why the delay happened. But the Fourth Amendment analysis is not driven by the passage of time alone. "The touchstone is reasonableness" of the delay as determined in light of "the totality of the circumstances, not whether the government pursued the least intrusive course of action." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). The Court must "balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id*. (quoting *United States v. Place,* 462 U.S. 696, 703 (1983)). This fact-specific inquiry is necessarily made "on a case-by-case basis." *Id*. The Court may consider the defendant's post-conviction release status and attendant search and seizure conditions, among other factors. *Id*. at 634.

The circumstances here do not warrant suppression of the cell phone based on the search delay. To start, the delay did not meaningfully intrude on McNeely's possessory interests. *Sullivan*, 797 F.3d at 633-35. McNeely was in custody for the whole time that passed between the seizure and the first warrant, and could not have used the cell phone during the 41-day period. *Id*.; *see also Segura v. United States*, 468 U.S. 796, 813 (1984) ("virtually nonexistent" possessory interest in apartment and its contents when defendants were under arrest and in custody). In addition, as discussed, McNeely was a probationer subject to a warrantless search and seizure condition, which further reduced his possessory interest in the phone. *Sullivan*, 797 F.3d at 634. These factors distinguish situations where delays of less than 41 days were found unreasonable because they substantially intruded on possessory interests. *See*, *e.g.*, *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) (delay in searching postal packages alerted to by police dogs unreasonably intruded on interests of the individuals who mailed them).

There is also little doubt that the government had a reasonable and legitimate interest in retaining and searching the cell phone based on the likelihood that it contained evidence of

5

potential criminal violations by McNeely. *Sullivan*, 797 F.3d at 634. While the government might have acted faster to get a search warrant, it was "not required to pursue 'the least intrusive course of action.'" *Id*. (internal citation omitted).

The second warrant obtained on November 29, 2018, to further search the phone also does not amount to a Fourth Amendment violation under the circumstances of this case. The warrant application itself explains that "because of technological limitations at the time [of the first warrant], investigators were unable to obtain deleted data from the Target Devices. However, updated versions of the forensic software tools now contain physical analyzer software that allows for extraction of deleted data." Weingarten Decl., Ex. D at 15. A second warrant to make use of the latest technological tools, applied for only after such tools have become available, makes sense and is in line with "legitimate governmental interests." *Sullivan*, 797 F.3d at 634. Moreover, once McNeely's phone had lawfully been seized and searched, his expectation of privacy in it was "necessarily reduced by a significant degree." *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983).

## CONCLUSION

Suppression is denied.

**IT IS SO ORDERED.**

Dated: June 10, 2019

JAMES DONATO
United States District Judge