JOHN J. JORDAN, ESQ. (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Tel:  (415) 391-4814
Fax: (415) 391-4308
jjordanesq@aol.com

Counsel for Defendant
EUGENE LATRELL McNEELY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 17-204-JD |
| ) | |
| Plaintiff, ) | **DEFENDANT'S SUPPLEMENTAL** |
| vs. ) | **SENTENCING MEMORANDUM** |
| ) | |
| EUGENE LATRELL McNEELY, ) | Date:  October 16, 2019 |
| ) | Time:  10:30 a.m. |
| Defendant. ) | Hon. JAMES DONATO |
| ) | |
| ) | |
| ) | |

**INTRODUCTION**

The defendant, EUGENE LATRELL McNEELY, through counsel of record, John J. Jordan, hereby files this supplemental sentencing memorandum, to assist the Court at the defendant's sentencing hearing.

The defendant asks leave to file this supplemental report late, as Dr. Gregory needed additional time to complete her final assessment in this matter, due to limitations in visiting at Santa Rita and prior commitments in a death penalty case.  In light of the complexity of this case and the sentencing issues involved, counsel asks that the Court permit this late filing.  Counsel believed he needed to review Dr. Gregory's report before filing this last memorandum, and is submitting Dr. Gregory's report under seal concurrently with this memorandum..

**ARGUMENT**

**1.     Objections to the PSR**

The defense has reviewed the sentencing memorandum filed by the government, and maintains its objections to the final Pre-Sentence Report (PSR), as to the new allegations contained in paragraphs 29-40 of the PSR. An evidentiary hearing is needed, with testimony by H.S. and A.S., or alternatively, the Court can strike the paragraphs.

The defense now has an additional specific objection, after reviewing the PSR with the defendant. The PSR states in paragraph 36 that "After H.S. was raped by McNeely, he coaxed her to go back out there." PSR 36. This allegation is apparently based on a statement in H.S.'s interview by law enforcement on May 20, 2019, in which the special agent reports that "After [Redacted] was raped, McNeely coaxed [Redacted] to get back out there." Govt. Sent. Mem. Exhibit B, page 7, Bates 46091. This statement comes immediately after the special agent reports that McNeely and [Redacted] had sex four to five times a week. *Id.*

The defense believes that the probation officer in PSR 36 has confused McNeely with another individual, a client H.S. claimed forcibly raped her and was prosecuted for that offense in Alameda County Superior Court in the case of People v. Lawson. The statement by H.S. about being coaxed to go back out on the streets has been repeated before by H.S., but always, as counsel understands, in reference to after the forcible rape she alleged had been committed by another person. Accordingly, the statement in paragraph 36 should be stricken.

**2.     Objection to the Enhancement for Undue Influence**

The government contends that there should be a further 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence. McNeely objects to the government's contention that there should be a further 2-level enhancement under U.S.S.G. § 2G1.3(b)(2)(B) for undue influence. The government primarily relies on *United States v. Hornbuckle*, 784 F.3d 549 (9th Cir. 2015). However, while *Hornbuckle* does allow the enhancement even with prior prostitution by the women, the inquiry is always heavily factually dependant. McNeely contends

1  that the facts here are closer to those in *United States v. Calvo*, 596 Fed. Appx. 541 (9th Cir.
2  2015), where the Ninth Circuit found that the enhancement should not apply where the defendant
3  did not change the complainant's course of conduct. Here, the defendant does not appear to have
4  changed any course of conduct.

5  **3.     The Defendant's Request for a Downward Variance**

6        In addition to the facts contained in the defendant's sentencing memorandum, McNeely
7  also asks this Court to consider the report of Dr. Amanda Gregory, submitted separately under
8  seal to this Court.

9        The report of Dr. Gregory, while in no way seeking to excuse the defendant's behavior,
10 does give context to the defendant's behavior. Counsel will not repeat the entire report here, but
11 instead will highlight several points.

12       First, as Dr. Gregory reports, it is quite clear that the defendant suffered through a
13 horrendous childhood, with his siblings, with parents who abused drugs, took the children out of
14 school, failed to parent them in any way, and fought against the state's attempts to help the
15 children. Gregory Report at pages 4-6. And, as Dr. Gregory reports, there is strong
16 corroboration of the defendant's memories of his childhood contained in the Oregon state
17 records. The Oregon records related that "it appears that the children have suffered from
18 over-discipline at the hands of at least Mr. M (the biological father)…are reporting that EJ (Mr.
19 McNeely) is terrified that his dad might find out that he has told them anything that went on in
20 the home. He said his dad would 'beat him 'til he bled.'" Gregory report at page 6. Records from
21 1994 related that defendant "reported having been tied up and whipped by his father." Gregory
22 report at page 6.

23       Dr. Gregory 's report details a long childhood of repeated foster placements, difficulties
24 in school, early exposure to drugs and living on streets. Dr, Gregory concludes, in part:

25       Mr. McNeely's history early trauma (neglect and physical abuse) and abandonment (by
         his parents and foster parents) appear to be significant factors in his history of depression,
26       behavior problems and characterological issues. Records note that Mr. McNeely was

      likely exposed to drugs in utero and was exhibiting signs of withdrawal after birth (which is often associated with later impulse control and behavior problems). He and his siblings were removed from the home of the parents when he was aged eight secondary to the parents' neglect, which included exposing them to drug use and sales. Records note that at age nine, Mr. McNeely had been doing most of the parenting for his younger siblings. Records also indicate that after the children were placed in foster care, the parents were unreliable in their visits, with Mr. McNeely sometimes going to look for his parents in drug houses, and at one point the father tried to manipulate him into helping him kidnap the children. Records note that he witnessed domestic violence, was physically abused by the father (including being whipped to the point of bleeding) and was terrified about retaliation if he reported the abuse. Mr. McNeely reported that he was physically abused by his foster father. These childhood traumas contributed to his early emotional instability and development of later characterological issues.

Report at page 17.

      Dr. Gregory's report also explains to a large extent why the defendant earlier withdrew his first guilty plea: "Mr. McNeely's characterological issues include controlling behavior, difficulty trusting, authority issues and difficulty taking full accountability for his behavior, all of which appear to be elements of his decision to rescind his pleas." Report at 18.  For these reasons, the defense submits that he should not suffer greatly from his earlier decision to withdraw his guilty plea.

      Dr. Gregory concludes that the defendant suffers from "Other Specified Personality Disorder with Mixed Antisocial and Narcissistic Features Other Specified Depressive Disorder Cannabis Use Disorder, Moderate, in a Controlled Setting." Report at 18.  This disorder helps to explain and put into context the defendant's behavior, and supports a variance as requested by the defense.  The defendant had little or no choice in how his childhood would play out, and the earlier trauma he suffered has contributed to his current conditions, which affect his behavior. These unique facts justify a variant sentence.

## CONCLUSION

      The defendant asks this Court to sentence him to a 120 months incarceration, followed by supervised release with appropriate conditions.

      The defendant amends its earlier request and asks the Court to recommend placement in the BOP facility closest to his family that has a sex offender program, preferably FCC Tucson,

and recommend RDAP, in light of his documented problems with alcohol and drugs.

This recommendation is consistent with Dr. Gregory's conclusion that the defendant needs and would benefit from continued treatment while incarcerated.

DATED: October 10, 2019.        Respectfully submitted,


*/s/ John J. Jordan*
JOHN J. JORDAN